STATE of South Dakota, Plaintiff
and Respondent,

v.

Charles Jason QUINN, Defendant
and Appellant.

No. 12699.

Supreme Court of South Dakota.

Argued Oct. 17, 1979.

Decided Dec. 19, 1979.

LeAnn Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Thomas M. Frankman of Willy, Pruitt, Matthews, Hurd, Farrell, Frankman & Johnson, Sioux Falls, for defendant and appellant.

DUNN, Justice.

Defendant was convicted by a jury of grand theft and driving while intoxicated. He was sentenced to three and one-half years in the state penitentiary for the grand theft conviction and one year for driving while intoxicated. We affirm as to the DWI conviction and modify the grand theft conviction to a petty theft conviction.

On the afternoon of June 21, 1978, Michael Hauger drove a 1967 Chevrolet Impala to teener baseball practice at Riverside Park in Yankton, South Dakota. At 4:30 p. m., he noticed that his car was missing. He reported the theft, and the Yankton Police Department notified him that an automobile matching that description had been taken into custody that afternoon.

Mr. Joe Sejnoha, the team coach, testified that he had observed defendant lying on the hood of the Hauger automobile during practice. Ten-year-old Steven Black testified that he and his friends had observed defendant driving a Chevrolet along Pearl Street and that he saw the Chevrolet hit a parked Cherokee Chief Jeep. After the accident, defendant parked the Chevrolet and walked toward Myron Creek. Steven made an in-court identification of defendant as having been the driver of the Chevrolet.

Shortly after Steven's observations, Officer Thomas Bagan responded to a police radio call that reported what appeared to be a body in Myron Creek. Upon his arrival, Bagan observed defendant lying in the creek. Meanwhile, Officer James Feltman responded to a report of the accident on Pearl Street involving the Chevrolet and the Jeep. During the course of the accident investigation, Feltman was led to the banks of Myron Creek where he found defendant, Bagan, Sergeant Ronald Ensenbach and Deputy Hunhoff.

Defendant was read his *Miranda* rights and arrested at the scene for DWI and leaving the scene of the accident. The arresting officers had to assist defendant in walking. They smelled a strong odor of an alcoholic beverage and observed a slurring of defendant's speech. After defendant was read his implied consent rights, Sergeant Ensenbach administered a breathalyzer test which indicated defendant had a blood alcohol count of 0.34%. By his own admission, defendant was intoxicated on the afternoon of June 21, 1978.

■ The first issue to be addressed is whether the value of the automobile was sufficient to constitute grand theft. The value of the property stolen must exceed two hundred dollars. SDCL 22–30A–17. The state has the burden of proving beyond a reasonable doubt each element of an offense that determines whether it is a felony or a misdemeanor. *State v. Jacquith*, 272 N.W.2d 90 (S.D.1978). The State did not meet this burden with regard to the value of the automobile.

South Dakota has adopted the "fair market value" test in determining the value of stolen property. *State v. Jacquith*, supra. The state produced two witnesses to establish fair market value. David Black testified that he was in the auto body business. In the twelve months prior to trial, he had bought or sold only one automobile built in or before 1967. He had never seen the automobile involved here. He based his entire opinion on facts presented in court by Michael Hauger; yet, these facts did not reflect whether the vehicle was a four-door or two-door model, the condition of the interior, the mileage on the vehicle, whether there was previous body damage, whether the engine had ever been rebuilt, the quality of the paint job, or other important factors. The vehicle was not listed in any used-car guidebooks upon which the witness could rely. Furthermore, Michael Hauger testified that the tires were in good condition, but the auto theft report indicated that they were all in poor condition.

■ In *Frawley Ranches, Inc. v. Lasher*, 270 N.W.2d 366 (S.D.1978), we stated that the trial court has wide latitude in determining whether a person is sufficiently qualified to testify as an expert on value, but such a person clearly must be familiar with the property in question. In *Frawley*, the witness had been an owner of land adjacent to the land in question for many years and had examined the property in question personally before testifying. The court allowed his testimony. That was an entirely different situation from the one in the instant case. Here, David Black had never seen the property, was only marginally engaged in dealing in used cars of this type, and his opinion was based upon inadequate information. In particular, we find the discrepancy between Hauger's statement regarding the condition of the tires and that contained in the auto theft report to be most significant. The Supreme Court of North Dakota has made the persuasive point that expert testimony should only be based upon another's testimony where there is no conflict in the facts. *Burdick v. Mann*, 60 N.D. 710, 236 N.W. 340 (1931); *Walters v. Rock*, 18 N.D. 45, 115 N.W. 511 (1908).

Hence, we find that David Black was not properly qualified as an expert on 1967 Chevrolets in general, or on this automobile in particular, and he should not have been permitted to so testify.

█ Michael Hauger, the primary driver of the vehicle, was the second witness to testify with regard to the value of the automobile. He testified that he would not have accepted less than $200 for the vehicle. Even though Michael frequently drove the automobile, there was no showing that he had any knowledge of the value of 1967 Chevrolets of this type. He was certainly not an expert in this field.

In a strikingly similar fact situation, the court in *Powell v. Hartman*, 37 Or.App. 455, 587 P.2d 506 (1978), stated that where the automobile involved was owned by plaintiff but was frequently operated, and was being operated at the time of the accident, by plaintiff's young daughter, the daughter's testimony regarding value should not have been admitted. The court stated: "Although Lou Anne Powell (daughter) indicated she was familiar with the condition of the vehicle prior to the accident, she did not indicate any special knowledge, skill, experience or training which would qualify her as competent to testify as to the fair market value of the vehicle." 587 P.2d 507.

Furthermore, South Dakota's "fair market value" test inherently involves the price the *owner* would accept if selling the property on the open market under normal conditions. South Dakota Pattern Jury Instruction 3–7–602a. Only the owner of a vehicle has the power to sell it, and therefore the opinion of Michael Hauger regarding the amount he would have accepted is not relevant to the question of value.

It is true that no objection was interposed at the precise moment that Hauger gave his opinion as to value; however, objections regarding his qualification to testify had been made and sustained on two previous occasions during trial, and we deem this sufficient to raise the question on appeal in a criminal case where the burden is upon the state to prove the valuation of the item taken beyond a reasonable doubt. After

dismissing the opinion of David Black regarding value, the testimony of Michael Hauger becomes the only evidence proffered by the state to establish value. It is clear therefore that admission of Michael Hauger's testimony was gravely prejudicial to defendant in that the absence of proof of sufficient value reduces the crime from grand theft to petty theft. We modify the conviction of grand theft to a conviction of petty theft as the jury has returned a verdict based upon evidence sufficient only to prove the lesser offense. *People v. Hoffmeister*, 394 Mich. 155, 229 N.W.2d 305 (1975); *State v. Jackson*, 198 Minn. 111, 268 N.W. 924 (1936); *State v. Gunn*, 89 Mont. 453, 300 P. 212 (1931); *State v. Porello*, 138 Ohio St. 239, 34 N.E.2d 198 (1941); *State v. Braley*, 224 Or. 1, 355 P.2d 467 (1960); and *Forsha v. State*, 183 Tenn. 604, 194 S.W.2d 463 (1946).

█ Defendant also argues that the state did not prove the "specific intent" element of theft. The line between theft and "joy riding," which is a misdemeanor under SDCL 22–30A–12 and SDCL 32–4–4, is cloudy at best. There certainly is no evidence in the record that defendant intended to return the automobile to its rightful owner. Defendant's blood test was 0.34, which is dangerously high. In light of this high percentage of alcohol in defendant's blood, we believe that the trial court could have, if it wished, refused to submit the intent question to the jury. The trial court's discretion, however, is very broad in this area, and we do not choose to rule as a matter of law that a blood test of 0.34 automatically negates the presence of specific intent. Other factors may be weighed by the trial court, especially the testimony of the arresting officers that although his speech was slurred and he had difficulty walking defendant was still able to communicate. Once the intent issue was submitted to the jury, the jury was fully instructed that intoxication may negate specific intent. The jury apparently was convinced that defendant was capable of forming intent. The question was for the jury, and we are not inclined to upset its findings.

Defendant next contends that introduction of his two prior felony convictions into evidence was prejudicial. Out of the presence of the jury, defendant admitted to the court that he had been convicted on felony charges twice previously. In response to counsel's objection to this evidence, the court stated:

> That has been the rule in this state for many many years. And the rule 609 now places a burden on this court, and that is why we are in chambers, and the State is required to make an offer of proof so that the court may determine whether or not the probative value of this type of evidence outweighs the prejudicial, possible prejudicial, effect. I will tell you, myself, I never cared for this type of questioning. But that is my own personal view. Because I feel in most cases that this type of testimony is more prejudicial than the probative value of such testimony. But our rules permit it and I am bound by those rules, and I intend to stay bound until they are changed by the Supreme Court.

Rule 609 of the South Dakota Rules of Evidence, SDCL 19–14–12, allows a court to admit evidence of this type only if its probative value outweighs its prejudicial effect. The statement set out above indicates that the court believed such evidence was too prejudicial "in most cases." There is no statement anywhere in the trial record that the evidence in this specific case was more probative than prejudicial. Additionally, no such inference may be gleaned from the court's statement.

It is clear that the trial court erroneously assumed it was forced to allow the convictions into evidence. We do not rule on the question of whether introduction of the convictions was more probative than prejudicial. In view of our modification holding in this case, we would not reverse the conviction on this issue alone; however, we would caution trial courts to make a definite finding that the evidence is more probative than prejudicial before allowing prior convictions into evidence.

We have considered defendant's remaining contentions that the trial court should have admonished the jury to disregard Officer Feltman's testimony that defendant had left the state in addition to simply ruling that "the answer is out;" that he did not knowingly consent to a breathalyzer test; and that the implied consent statute is unconstitutional, and we find them without merit.

The judgment of conviction on the DWI charge is affirmed. The judgment of conviction of grand theft is modified to petty theft. Upon remand, the lower court should resentence defendant in a manner consistent with this opinion.

HENDERSON and FOSHEIM, JJ., concur.

WOLLMAN, C. J., and MORGAN, J., concur in part and dissent in part.

MORGAN, Justice (concurring in part, dissenting in part).

I concur in part and dissent in part.

I agree with the majority opinion except as to the admission of the evidence of previous convictions. The majority admits that the trial judge was under a misapprehension as to the effect of Rule 609 of the South Dakota Rules of Evidence. He made no finding that the proffered evidence was more probative than prejudicial. If there were no close questions before the jury, I might agree with the disposition. However, in view of the question of specific intent that was before the jury,* I consider the question of probity versus prejudice a very important question not to be passed over with a mere warning to trial judges in future cases.

I would affirm the DWI conviction and reverse the conviction of grand theft, and remand for new trial on the charge of petty theft.

I am authorized to state that WOLLMAN, Chief Justice, joins in this concurrence in part and dissent in part.

---

* The majority notes that the defendant's blood test of 0.34 was *dangerously high.*