Submitted February 25; portion of supplemental judgment and second amended judgment imposing special conditions of probation reversed, remanded for resentencing, otherwise affirmed May 26, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEITH ALLEN THARP,
aka Keith Alan Tharp,
*Defendant-Appellant.*

Washington County Circuit Court
19CR32867; A172155

489 P3d 1119

Defendant was convicted by guilty plea of second-degree criminal mischief after he damaged the victim's car. He appeals from a supplemental judgment, which imposed probation conditions and a restitution award, and a second amended judgment, which imposed additional probation conditions. He assigns error to the trial court's award of $2,504.37 in restitution, contending that the state did not present sufficient evidence for the court to determine that the victim's damages were reasonable. Defendant also assigns error to the trial court's imposition of various special conditions of probation. *Held*: The trial court's award of restitution was not error. The evidence of the victim's damages, which included a detailed repair estimate that was based on photographs of the damage to the car and the victim's testimony, was sufficient under *State v. Aguirre-Rodriguez*, 367 Or 614, 482 P3d 62 (2021). However, as the state concedes, the court erred in imposing the special conditions of probation.

Portion of supplemental judgment and second amended judgment imposing special conditions of probation reversed; remanded for resentencing; otherwise affirmed.

James Lee Fun, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Portion of supplemental judgment and second amended judgment imposing special conditions of probation reversed; remanded for resentencing; otherwise affirmed.

**SHORR, J.**

Defendant appeals from a supplemental judgment, which imposed probation conditions and a restitution award, and a second amended judgment, which imposed additional probation conditions. Defendant's appeal follows his guilty plea to criminal mischief in the second degree. He assigns error to aspects of his sentencing, including the trial court's award of restitution and its imposition of special conditions of probation. In his first assignment of error, defendant contends that the trial court violated his due process rights under the Fourteenth Amendment to the United States Constitution when it admitted into evidence at the restitution hearing a written repair estimate of the damages to the victim's car. We conclude that that argument was not preserved in the trial court and reject it without further discussion. Defendant next assigns error to the trial court's award of $2,504.37 in restitution, contending that the state did not present sufficient evidence for the court to determine that the victim's car damages were reasonable. For the reasons discussed below, we reject that assignment of error and affirm the court's restitution award. In his third through eighth assignments of error, defendant assigns error to the trial court's imposition of various special conditions of probation. The state concedes those errors, and we accept the state's concessions. As a result, we reverse certain special conditions of probation in the supplemental judgment and the second amended judgment and remand for resentencing, but otherwise affirm.

We begin with defendant's second assignment of error, which challenges the trial court's determination that the restitution award was reasonable. We recount only those facts necessary to understand the restitution issue, which are undisputed. Defendant had previously dated the victim's daughter. After his relationship with the daughter ended, defendant continued "hanging around" the victim's apartment trying to contact the daughter. Defendant was outside the victim's apartment when she and a passenger arrived in her car. After the victim told defendant not to come by anymore, an altercation ensued between defendant and the passenger. As the victim and her passenger drove away, defendant threw a rock at the car and then a cinder

block, which put a "big dent" in the car's driver's side door and scratched the driver's side windows. As noted above, defendant ultimately pleaded guilty to criminal mischief in the second degree, ORS 164.354.

The victim testified at the restitution hearing that she obtained a repair estimate from Leif's Auto Collision. Leif's is identified on the estimate as an auto repair shop located in Oregon. She testified that she went to that company because she had used its services before and trusted it. At the time of the hearing, the victim had not had her car repaired but intended to do so.

The state offered the repair estimate into evidence. The estimate stated that it was a "preliminary estimate" that was based on photographs of the car and that a complete estimate could occur when the vehicle's damaged parts were removed. The estimate identified the parts that needed to be replaced and the costs of those parts. Those parts ranged in cost from under $10 for a clip to $365.52 for the front door glass window. The parts and material estimate amounted to $803.97. The estimate also identified the labor that needed to be done, the estimated time for that labor, and the hourly cost for the labor. The labor costs included labor for sheet metal work (16.6 hours at $58 per hour), refinishing work (6.7 hours at $58 per hour), and mechanical and electrical work (2.0 hours at $115 per hour). The total identified labor time amounted to 25.3 hours, and the total cost for that labor totaled $1,581.40.[1] The estimate also included a line item for "sublet repairs" in the amount of $119. As noted, the total estimate, which combined the parts, labor, and "sublet repairs" was $2,504.37. The estimate purported to rely on an estimating program that was proprietary.

Defendant objected to the trial court's admission and use of the estimate. Among other things, defendant objected that the exhibit "doesn't state the necessity or whether it was reasonable or necessary to complete * * * this repair." Defendant further argued that, under *State v. Dickinson*, 298 Or App 679, 448 P3d 694 (2019), "there [are]

---

[1] There was also additional time identified for 6.7 hours of painting and materials at $36 per hour, but that portion was already included in the parts and material estimate.

real concerns here about whether or not it was reasonable and necessary."[2]

The trial court admitted the exhibit and awarded the $2,504.37 repair-estimate amount as restitution. It implicitly determined that the estimate amount was reasonable and explicitly determined that the repairs were necessary. The court distinguished the evidence in the present case, a detailed car repair estimate that was based on a photograph of the specific car damage, from a medical bill in which the relation between the criminal conduct, particular line items within the bill, and the overall cost is not as clear.

On appeal, defendant contends that the trial court erred because the "bare estimate" of the cost of repairing the damages that was provided is insufficient to demonstrate the reasonableness of the victim's economic damages under ORS 31.710(2)(a) and our case law. In his opening brief, defendant relied primarily on our decision in *State v. Aguirre-Rodriguez*, 301 Or App 42, 455 P3d 997 (2019), *rev'd*, 367 Or 614, 482 P3d 62 (2021) (*Aguirre-Rodriguez I*). In its answering brief, the state conceded that, under our decision in *Aguirre-Rodriguez I*, defendant was correct that the evidence was insufficient to demonstrate that the damages were reasonable. However, the state noted that it had sought review of our decision in that case, which was then pending before the Supreme Court. Shortly after this case was submitted, the Supreme Court reversed our decision. *State v. Aguirre-Rodriguez*, 367 Or 614, 624, 482 P3d 62 (2021) (*Aguirre-Rodriguez II*). We discuss the Supreme Court's decision at length below. Before that, however, we address the standard of review and the statutory requirements for restitution.

On review of an order awarding restitution, we consider whether the evidence was sufficient to support the trial

---

[2] *Dickinson* addressed whether medical and hospital charges paid by a health insurance company and reflected on a ledger were necessarily incurred. 298 Or App at 680, 684-85. In the trial court, defendant argued that it was unclear whether the repairs were either necessary or a result of defendant's criminal conduct, suggesting that some of the car's damage reflected in the estimate may have occurred prior to or after defendant's criminal conduct. On appeal, defendant mentions in his opening brief that the costs were not necessary but fails to develop that argument beyond such bare mentions. Therefore, we do not address that argument. Rather, we address only defendant's developed argument that the trial court erred when it determined that the repair costs were reasonable.

court's determination that the restitution damages imposed were reasonable. *Id*. at 620. We view the relevant evidence in the light most favorable to the state as the party that prevailed in the trial court. *Id*. "Because the state prevailed, the issue * * * is whether a rational factfinder, accepting all reasonable inferences, could have found the facts necessary to support the award." *Id*.

We turn to the relevant restitution law. "Under Oregon law, restitution is to be awarded when a defendant has been convicted of a crime that results in economic damages to the victim and the state has presented evidence of those damages." *Id*. at 618. With a limited exception not relevant here, economic damages "[h]as the meaning given that term in ORS 31.710." ORS 137.103(2)(a). ORS 31.710, in turn, provides that economic damages are "objectively verifiable monetary losses including * * * reasonable costs incurred for repair or for replacement of damaged property, whichever is less." ORS 31.710(2)(a). The burden of establishing the amount of economic damages is on the state, but that evidence is subject to rebuttal and a complete challenge by the defendant. *Aguirre-Rodriguez II*, 367 Or at 618-19. "The [restitution] statute requires only that the damages be objectively verifiable monetary losses that result from a defendant's criminal activity." *State v. Ramos*, 358 Or 581, 588, 368 P3d 446 (2016) (internal quotation marks omitted).

As noted, defendant argued in the trial court and contends again before us that the state did not meet its burden to present sufficient evidence of the reasonableness of the costs of the repairs. We return to a discussion of *Aguirre-Rodriguez II* because it addresses the legal issue in this case and has some significant overlapping facts. In that case, the Supreme Court stated that it "remains the law" that "evidence of payment of a charge, on its own and devoid of explanation, does not establish that the amount charged was reasonable," but also concluded that the evidence was more extensive in that case. *Aguirre-Rodriguez II*, 367 Or at 620. The court looked to market value as an appropriate measure for the reasonable cost of repairs. *Id*. at 621. As the court stated, although reasonable market value cannot be established by mere speculation, it can be established

through reasonable inferences that a factfinder could, but is not required to, draw from the facts adduced. *Id*. at 623.

In *Aguirre-Rodriguez II*, the state presented the following evidence to support the reasonableness of the cost of repair of a vehicle: the bill for the vehicle's repairs, evidence that the bill was paid by the victim's insurer, the Kelley Blue Book value of the car itself, "a detailed repair estimate that was produced using third-party materials and sourced parts from local suppliers," and photographs of the damage. *Id*. Although noting all of those facts, the court ultimately relied on only two key facts that permitted the trial court as factfinder to find the charge was reasonable. The court concluded that

> "[t]he detailed repair estimate and the photographs of the damage to the truck after the collision were sufficient to permit a reasonable factfinder to infer that the repair costs were a reflection of the relevant market rate and, thus, reasonable. *** Considered together, the repair estimate, prepared using local market rates, and the photographs of the damage to the victim's truck, demonstrate a sufficient nexus to permit the trial court to conclude that the cost of repairs was reasonable."

*Id*. at 623-24.

Here, the key evidence was similar. The state presented evidence of a detailed repair estimate that had a line-item breakdown of the time required for various repairs, the hourly labor cost for those repairs, and the cost of the parts that needed replacement. In *Aguirre-Rodriguez II*, the court stated that the estimate was prepared using "industry-standard materials designed to source prices directly from the local market and to estimate labor rates and the price of replacement parts." *Id*. Although we do not have evidence of whether the repair estimate was presented using "industry-standard materials" that source local prices and labor rates, the estimate provided here at least includes references to software that aided in producing the estimated prices and the estimate, as in *Aguirre-Rodriguez II*, identified specific labor, hourly labor rates, and the cost of replacement parts. There is also evidence that Leif's is an Oregon-based auto

repair shop and much of the cost of the estimate is based on labor that was to be performed by Leif's. A defendant may challenge that estimate and a reasonable factfinder might infer that the prices were too high, but there was a basis from which a factfinder at least "could" conclude that the rates were reasonable. *See id*. at 623 ("A reasonable inference is one that a factfinder *could* infer from the facts adduced; it is not an inference that a factfinder is required to draw." (Emphasis in original.)).

In *Aguirre-Rodriguez II*, the court also relied on the fact that there were photographs in evidence showing the damage. *Id*. at 624. Here, there were no photographs presented in evidence, but there was evidence that the estimate itself, which was in evidence, was prepared based on photographs of the damage. Further, at the restitution hearing, the victim described the damage to the car, namely a "big dent" in the car door and scratched car-door window. That testimony would at least allow a factfinder to draw inferences connecting the described damage to the repair estimate, and to assess the types of damage at issue compared to the repair estimate. Although photographic evidence might provide more detail than testimony, we do not require such evidence to prove damages, and testimonial evidence is commonly relied upon to describe damage. *See, e.g.*, *Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990) (in the civil context, "[a]n owner's testimony of the amount of damages generally suffices to withstand a motion to dismiss or for a directed verdict on the issue of damages").

Defendant argues that the state's proof is weaker than that presented in *Aguirre-Rodriguez* because, in that case, there was a *paid* bill reflecting the damages and, here, the estimate had not been paid by the victim. We observe that, in the end, the Supreme Court did not rely on that fact in concluding that there was sufficient evidence from which a factfinder could find that the repair bill was reasonable. *Aguirre-Rodriguez II*, 367 Or at 623. Perhaps it could add slightly to an inference of reasonableness if there is evidence that the victim had paid the proposed estimate, indicating that the victim at least thought it reasonable enough to pay.

Regardless, the Supreme Court did not resolve that issue in *Aguirre-Rodriguez II* and neither do we in this case.[3]

As noted, the court in *Aguirre-Rodriguez II* found it significant that the estimate in that case was based on "industry-standard materials designed to source prices directly from the local market and to estimate labor rates and the price of replacement parts." 367 Or at 623-24. Likewise, here, there is evidence that the estimate used industry software to determine rates. Further, a factfinder could reasonably infer that the labor used is local labor based on Leif's rates because there was evidence that Leif's is an Oregon-based repair shop that the victim used previously for her car repairs. From that evidence, a reasonable factfinder could also infer that this was a proposed arms-length transaction between the victim and a local business. We are unaware whether the replacement car parts are sourced locally, if such parts are priced based on local markets, or from national suppliers based on national prices. The Supreme Court did not clarify whether that additional fact was controlling and always necessary where there is evidence of a detailed repair estimate from a local car shop using local labor as well as evidence of corresponding damage to the car. Nevertheless, we conclude that a factfinder could find the rates in the repair estimate are reasonable without engaging in impermissible speculation in light of the significant detail provided in the estimate, the inference that the labor rates are based on Leif's rates for local labor performed at their shop, and the ability of the factfinder to assess the damage for itself and compare that to the estimated repair costs. *See Aguirre-Rodriguez II*, 367 Or at 623 (stating that an inference cannot be "supported by mere speculation" but "must be reasonable, based on the record"). In sum, we conclude that the state presented sufficient evidence from which the trial court acting as factfinder could draw the conclusion that the $2,504.37 repair estimate was reasonable. As a result, we affirm its restitution award.

------

[3] We are unaware of any requirement in the law that a detailed estimate *must* be paid to be found reasonable. We note that the victim testified that she had intended to make the repairs with this auto-body shop and had used them in the past. We further observe that a person may suffer property damage without choosing to repair that damage, and that choice does not necessarily reflect on the reasonableness of the cost of repair.

Finally, defendant contends in his third through eighth assignments of error that the trial court erred in adding special conditions of probation that required defendant to submit to a search of his "person, residence, vehicle and property by the supervising officer" as well as several financial conditions that generally required defendant to "Provide Financial Records," submit to a "Financial Review," "Be Financially Responsible," "Disclose Income," and "Disclose [financial transactions] Greater Than $200" to his supervising officer. Further detail of the financial restrictions imposed are not necessary to this opinion.

Defendant contends that the search condition is overbroad and invalid because the legislature has already required probationers to consent to searches, but only "if the supervising officer has reasonable grounds to believe that evidence of a violation will be found." ORS 137.540(1)(i). Defendant contends that, in *State v. Schwab*, 95 Or App 593, 596-97, 771 P2d 277 (1989), we vacated a nearly identical probation condition that required the probationer to unconditionally consent to a search. The state concedes that *Schwab* controls this case and the trial court erred in imposing the special condition. We agree and accept the state's concession.

Defendant next contends that the trial court erred in imposing the special financial probation conditions because they are not reasonably related to his conviction for criminal mischief for damaging the car or to his needs as a probationer under ORS 137.540(2).[4] The state again concedes that error. Because the record does not support the imposition of the special conditions of probation relating to defendant's finances, we accept the state's concession.

In sum, we reject defendant's challenge to the restitution award. However, we agree with defendant's challenge to the special conditions of probation noted above and reverse those conditions.

---

[4] ORS 137.540(2) provides, in relevant part, that a court may impose "any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both."

       Portion of supplemental judgment and second amended judgment imposing special conditions of probation reversed; remanded for resentencing; otherwise affirmed.